IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

GEORGE M. BAYLOR, M.D.,

        Plaintiff,

v.                               CIVIL ACTION NO.  2:04-cv-01265

GENERAL ANESTHESIA SERVICES, INC.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the court are the plaintiff's motion for partial summary judgment [Docket 23] and the defendant's motion for summary judgment [Docket 25].  The plaintiff seeks summary judgment on Counts II and III and the defendant seeks summary judgment on all three counts.  For the explained reasons, I **DENY** the plaintiff's motion for partial summary judgment and **GRANT** the defendant's motion with regard to Counts II and III but **DENY** the defendant's motion with regard to Count I.

*A. Background*

The defendant, General Anesthesia Services, Inc. ("GAS"), employed the plaintiff, George M. Baylor, M.D. ("Dr. Baylor") pursuant to an employment agreement signed on June 18, 2002.  Dr. Baylor provided pain-management services for GAS through December 31, 2003.  GAS billed Dr. Baylor's services to third-party payors through a billing company, CBIZ Medical Management Professionals, Inc. ("MMP").  The employment agreement stated GAS would pay Dr. Baylor a base

salary of $190,000 per year.  *Employment Agreement with Pain Management Physician* ¶ 7.  The agreement also called for GAS to pay Dr. Baylor "Additional Compensation," which the agreement defines as follows:

> *Additional Compensation.*  In addition to the base salary pursuant to paragraph 7 above, Employee shall be paid additional compensation pursuant to the following methodology: net collected revenues attributable to the Employee minus: (1) all billing expenses associated with the collection of revenues attributable to Employee; (2) all healthcare provider taxes, business and occupancy (B&O) taxes and other taxes attributable to the generation of revenue by Employee; (3) all direct Employee expenses attributable to the provision of pain management services . . . (4) a pro rata share . . . of all direct practice management expenses attributable to the provision of pain management services . . . (5) a pro rata share . . . of all direct practice management expenses of GAS . . . the sum of which, if any, shall be available for distribution to Employee.  Such sum shall be distributed to Employee up to $110,000 per calender year.  In the event that such sum exceeds $110,000 per calender year, then such additional sum shall be distributed in such a manner that GAS shall receive twenty percent (20%) of such additional sum and Employee shall receive eighty percent (80%) of such additional sum.  The additional compensation calculation shall be done on a quarterly basis and the resulting distribution, if any, shall be made as soon as reasonably possible after the end of each quarter.  The methodology for determining the additional compensation for Employee may be changed from time to time by the Board of Directors of GAS.

*Id*. ¶ 8.  The agreement provides that whenever Dr. Baylor departed, GAS was required to pay Dr. Baylor his base salary and additional compensation as required under the agreement "subject to setoff for any amounts owed GAS by [Dr. Baylor]."  *Id*. ¶ 20.

In August 2003, GAS discovered an ongoing billing error by MMP.  An improper classification of the facility where GAS physicians provided service caused the error.  The error caused GAS to overcharge third-party payors.  As a result, GAS overstated revenues and overpaid its physicians through "Additional Compensation."  GAS sought to pay back the overcharged third parties and recover the amounts mistakenly paid to the physicians.  Rather than ask the physicians

to write GAS a check for the amounts overpaid, GAS adjusted net revenues, which in turn lowered the amount of "Additional Compensation" available to pay each physician.

On November 30, 2004, Dr. Baylor filed a three-count Complaint against GAS.  Count I alleges that GAS violated the Uniform Services Employment and Re-employment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301 et seq. (2000).  Specifically, Count I alleges GAS informed Dr. Baylor that his services were no longer needed immediately prior to Dr. Baylor taking a leave of absence to serve as a reserve member in the U.S. military.  (Compl. ¶ 23.)  Allegedly, GAS "informed Dr. Baylor that it could not maintain its pain management physicians when its physicians could not be counted on to work full-time."  (*Id*. ¶ 24.)

Counts II and III relate to the GAS attempts to recover the excess payments made to the physicians.  Count II alleges a breach of the employment agreement and Count III alleges a violation of the West Virginia Wage Payment and Collection Act ("WPCA"), W. Va. Code Sections 21–5–1 et seq. (2006).

Dr. Baylor moved for summary judgment on Counts II and III; GAS moved for summary judgment on all counts.  I will consider each count in turn.

### B. Summary Judgment Standard

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The party seeking summary judgment has the initial burden to show an absence of evidence to support the nonmoving party's case.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The opposing party must demonstrate that a genuine issue of material fact exits; mere allegations or denials are insufficient. *Liberty Lobby*, 477 U.S. at 248.  A mere scintilla of evidence supporting the case also is insufficient.  *Id*.; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).  The court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmovant's favor. *Matsushita*, 475 U.S. at 587–88.

### B. Count I:  USERRA Claim

The defendant claims it is entitled to summary judgment on Count I because GAS did not make the decision to part ways with Dr. Baylor because of his military service obligation.  USERRA provides that a person may not be denied re-employment because of participation in the military. 38 U.S.C. § 4311(a).  The defendant argues no evidence exists showing that GAS's decision was motivated by Dr. Baylor's participation in the military.  As the plaintiff explains in his response, however, Dr. Baylor alleges GAS informed him that GAS could not retain physicians who could not be depended on to work full time.  In addition, GAS allegedly made this statement just one day after receiving notice of Dr. Baylor's pending military deployment.  The plaintiff has met his burden of establishing the presence of genuine issues of material fact on Count I.  Accordingly, I **DENY** the defendant's motion for summary judgment as to this count.

### C. Count II:  Breach of Contract Claim

Each party moves for summary judgment on Count II.  The plaintiff contends that GAS breached the employment agreement by failing to fulfill its contractual obligations.  No evidence

exists showing GAS failed to pay Dr. Baylor's base salary as specified in paragraph 7 of the contract. The only question is whether GAS failed to pay Dr. Baylor any "Additional Compensation" he was entitled to according to paragraph 8. As set forth above, the contract entitles Dr. Baylor to receive net collected revenues attributable to him minus certain specified deductions. *Employment Agreement with Pain Management Physician* at ¶ 8.

By mistakenly overcharging third-party payors, GAS's net collected revenues were overstated.[1] As a result, in calculating the amount of "Additional Compensation" to pay Dr. Baylor, GAS mistakenly paid him too much. Because the net collected revenues were overstated, Dr. Baylor's "Additional Compensation" was overstated. The amount of the overstatement was not part of the actual net collected revenues of GAS. The excess amounts paid to Dr. Baylor, therefore, were not net collected revenues and thus Dr. Baylor had no right to receive these amounts as "Additional Compensation" under the contract.

Courts generally have no difficulty in granting recovery of compensation paid to an employee under mistake of fact unaffected by fraud. G. B. Crook, Annotation, *Recovery Back by Employer of Compensation Paid to Employee as Result of Mistake or the Employee's Fraud*, 88 A.L.R. 2d 1437, at *3 (1998). In fact, courts grant recovery in this situation—whether the mistake is exclusively the employer's or a mutual one—"almost as a matter of course and without extended discussion." *Id.* at *6; *see, e.g.*, *Browder v. Milla*, 296 S.W.2d 502, 508–10 (Mo. Ct. App. 1956)

---

[1]　To the extent Dr. Baylor claims GAS did not actually overpay him or that GAS also is recovering a percentage of the overpayments from other parties, he failed to show the existence of genuine issues of material facts as to either argument. Because Dr. Baylor offered no more than a scintilla of evidence on these arguments, merely alleging them is insufficient to withstand the defendant's summary judgment motion.

(finding employer entitled to recover excess amounts paid to employee as compensation because of mistaken calculation).

The defendant points out that GAS overpaid Dr. Baylor because of a mistake in fact concerning its billing company's improper characterization of the place where Dr. Baylor and other pain-management physicians performed service. The plaintiff has no evidence that GAS was at fault in overpaying Dr. Baylor. The contract does not give Dr. Baylor the right to a windfall. Accordingly, I **GRANT** the defendant's motion for summary judgment as to Count II.


### D. Count III: WPCA Claim

Dr. Baylor also alleges that GAS violated the WPCA by wrongfully withholding wages due him under the Act. *See Shaffer v. Ft. Henry Surgical Assocs., Inc.*, 599 S.E.2d 876, 882–83 (W. Va. 2004) (explaining physicians are "employees" for WPCA purposes). The WPCA defines "wages" as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission, or other basis of calculation." W. Va. Code § 21–5–1(c).

Dr. Baylor argues that GAS improperly withheld wages that were due as "Additional Compensation." The contract ties "Additional Compensation" directly to the net collected revenues of each physician. Dr. Baylor had no right to "Additional Compensation" until after GAS calculated net revenues. Paragraph 8 of the contract explains that the amount of "Additional Compensation," as determined on a quarterly basis, first requires a calculation of "net collected revenues" and then contemplates several specific deductions. By using the word "net" before "revenues," the contract contemplates expenses or debts of the corporation accounted for prior to the arrival of this figure. For example, in the next quarter, assume GAS has gross revenues of $100. To determine net

revenues, GAS must account for its expenses. Assume quarterly expenses are $80, which leaves $20 as net revenues. This is the figure tied to the "Additional Compensation" section of the contract. In other words, the contract implies that certain "above-the-line" calculations have to be made to determine net revenues. Otherwise, GAS would have no money to pay expenses or debts.

In calculating net revenues, GAS expensed the billing errors. This "above-the-line" calculation decreased the amount of net revenues attributable to each physician. Only after net revenues were calculated did the physicians have a right to those amounts as "Additional Compensation." The "Additional Compensation" part of Dr. Baylor's contract entitles him to share in GAS's profits. These profits are "wages" as that term is broadly defined in the WPCA. The WPCA, however, protects Dr. Baylor only to the extent that GAS has any profits or net revenues available to pay "Additional Compensation." Because GAS had none after its calculation of net revenues, no monies existed that constituted "wages" under the Act.

No "assignment of future wages" occurred in this case because GAS did not withhold any "wages" properly due Dr. Baylor. This point distinguishes the case from *Robertson v. Opequon Motors, Inc.*, 519 S.E.2d 843 (W. Va. 1999), on which Dr. Baylor heavily relies. In that case, the West Virginia Supreme Court of Appeals found that a car dealership violated the WPCA by deducting certain costs from the commissions of its employees. *Opequon Motors*, 519 S.E.2d at 850–51. The court held that the commissions were "wages," and that the dealership could not make deductions from those wages unless it executed a valid assignment of wages as specified in the Act. *Id*. at 850. In our case, however, GAS did not have to make a valid assignment of wages because the monies allegedly withheld from Dr. Baylor were not actually "wages."

-7-

GAS's actions were proper as a matter of law.  Accordingly, I **GRANT** summary judgment to the defendant on Count III.

*E. Conclusion*

For the explained reasons, I **DENY** the plaintiff's motion for partial summary judgment and **GRANT** the defendant's motion with regard to Counts II and III but **DENY** the defendant's motion with regard to Count I.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        August 8, 2006

JOSEPH R.  GOODWIN
UNITED STATES DISTRICT JUDGE